IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. BAUGHAN<br>      Plaintiff<br><br>v.<br><br>KEITH PELLETIER, TODD OLIVER<br>FRANCIS NAPERT and SCOTT<br>ARLINGTON<br>      Defendants | Civil Action<br>No. 04-10704RWZ |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS SECOND AMENTED COMPLAINT**

**Introduction**

Defendants have filed a Motion to Dismiss Plaintiff's Second Amended Complaint. They contend that Plaintiff's own factual allegations establish that they had probable cause to stop, detain, arrest and prosecute him and that all of his claims are therefore subject to dismissal for failure to state a claim.

To support this argument, the defendants have extracted small segments from some of the paragraphs of factual allegations in plaintiff's several complaints, removed them from their context and blended one or more of them with their own interpretation so that the originally pleaded facts have become hopelessly blurred. To further compound the confusion and distort the facts, they have thrown into the mix, statements from a police incident report which they attempt to pass off as adoptive admissions based on a legally unsupportable interpretation of Fed.R.Civ.P.10(c) that everything contained in a hearsay document annexed to a Complaint as an Exhibit is an adoptive admission which can be deemed to be an admitted fact in the Complaint. From out of this bizarre blend comes their so-called, "Relevant Facts", which they then argue establish probable cause for the police officers' actions. .

Plaintiff further contends that this Court cannot rule on the presence or absence of probable cause based solely on the facts alleged in his pleadings as such a determination requires an evaluation of the facts and circumstances known to the defendants at the time to determine whether a reasonable person in their position would believe there was probable cause. This determination is customarily reserved for trial or for summary judgment on grounds of qualified immunity. While the defendants are clearly of the

1

opinion that what they have labeled as the relevant facts establishes probable cause, that opinion is based on their interpretation of the facts.

In this Memorandum, plaintiff will first place the facts actually pleaded in the paragraphs cited by defendants before the Court so it can be readily seen that they do not establish probable cause, as defendants assert. Then, plaintiff will demonstrate that the facts as manipulated by defendants still do not establish probable cause.

### Relevant Facts and Argument

To support the "Relevant Facts" set forth in paragraphs 1 and 2, defendant cites Second Amended Complaint, para. 7, and First Amended Complaint, para. 12. Those paragraphs actually read as follows:

> On or about April 10, 2001, at around 6:50 P.M., **the plaintiff was operating a leased automobile on Main Road in the Town of Westport when he was ordered to stop by defendant, Oliver for allegedly proceeding through a stop sign and operating an unregistered motor vehicle.** (Second Amended Complaint, para. 7)
>
> **The purported reason for stopping the plaintiff's vehicle** was an expired registration and rolling through a stop sign, all of which is more discussed.....in the Westport Police Department Motor Vehicle Violation Report....(Amended Complaint para. 12.)

To support the "Relevant Facts" in paragraph 3, defendant cites Amended Complaint, para. 13, which actually reads:

> Upon stopping plaintiff's vehicle, **Oliver allegedly, based upon his observations,** had reason to believe that plaintiff was driving under the influence if alcohol. (Reference made to annexed report) (Amended Complaint, para. 13)

This paragraph is not one of those well-pleaded facts that should be considered in determining the 12(b)(6) motion and it was omitted from the Second Amended Complaint. It is, however, clear enough that what is alleged is that the officer alleges that he had reason to belief that defendant was driving under the influence of alcohol based on his observations upon stopping the vehicle, not that his alleged belief was credible or accurate.

To support the "Relevant Facts" in paragraph 4, defendants put together a unique blend of Second Amended Complaint, para. 10 and Amended Complaint, para. 13 Paragraph 13 appears above. Second Amended Complaint, para. 10 reads:

> The defendants, one or more of whom knew of the plaintiff from his close scrutiny of the police department's budget item requests of the Town of Westport,

2

decided that the he should be placed under arrest for operating under the influence of liquor, based solely on the odor of an alcoholic beverage on his breath and despite his imploring the officers to drive him to the meeting. (Second Amended Complaint, para. 10).

The plaintiff is utterly mystified over how defendants are able to transform the allegations of these paragraphs into the fictionalized version set forth in paragraph 4. Up to this point, plaintiff has not even made any mention of disorderly conduct, an offense he alleges he was not charged with until the police failed to make any case for driving under the influence. Nor are there any facts asserted by plaintiff that give rise to the remotest inference that he was disorderly. The fiction becomes fairy tale with the inclusion of such outrageous assertions as his "mood swings" and his "refusal to perform field sobriety tests". Somewhere, there has been a drastic departure from reliance on the facts as pleaded. The absurdity goes on but the analysis will stop here.

To support the "Relevant Facts" in paragraph 5, defendants cite First Amended Complaint, para. 14 which actually reads:

The plaintiff informed Oliver that he had one drink with his wife at dinner and was on his way to Town Meeting.

This gets magically transformed into, the plaintiff admits that he had **at least one drink shortly before being stopped.**

One way or another, the defendants will try to establish probable cause but it will not be found in the plaintiff's allegations.

To support the "Relevant Facts" in paragraph 6, the defendants, for the first time, actually accurately quote the plaintiff's facts. Here, they complain that plaintiff has now added an allegation for the first time. Plaintiff does not understand what their problem is with this since he is new counsel and may have pleaded previously existing but hitherto unpleaded facts.

With respect to paragraph 7 of the "Relevant Facts", plaintiff actually alleged that he scored a .01 twice on the breathalyzer, not just that he "passed a breathalyzer test". This fact was included just to make it painfully obvious that there was no basis whatsoever for any police officer acting in good faith with even the most basic training to form an opinion that the plaintiff was under the influence of alcohol, let alone arresting him for it.

The plaintiff is not under any obligation to allege facts that establish the absence of probable cause. While the plaintiff is definitely bound by the facts alleged in his complaint(s), which are deemed to be admissions, his complaint is not subject to dismissal for failure to state a claim based on a legal argument arising from the recasting of these facts in a different light and an argument regarding their interpretation.

3

Turning to the specific claims and the arguments raised by the defendants, plaintiff states the following:

### B. Plaintiff's Constitutional Claims

### 1. False Arrest

Plaintiff's so-called "conclusory" claim that he was unlawfully detained and arrested are firmly grounded in and arise out of the well-pleaded facts in his Complaint. Contrary to defendants' interpretation of plaintiffs' facts, he has nowhere "acknowledged that he was driving with an expired registration" or that "his vehicle had passed a stop sign". Furthermore, contrary to defendants' assertion, M.G.L. c. 90, s.9 confers no rights on law enforcement officials whatsoever. A copy of the statute is annexed. These offenses would are civil in nature and entitle a police officer to conduct a short stop for the purpose if issuing a civil motor vehicle infraction. .Plaintiff has never contested Oliver's initial stop of his vehicle for that purpose. When the police transformed this brief, lawful stop into a full-blown seizure and ultimately an arrest without any probable cause, is when they crossed the line.

Plaintiff agrees that defendants have provided the correct standard for determining the existence of probable cause to arrest. However, from the standpoint of determining its existence at this premature and improper stage in the litigation process, the facts and circumstances known to the officer **as actually pleaded (and not interpreted or taken out of context by defendants)**, clearly do not establish probable cause..

Even if the Court accepts defendants' interpretation of the facts such that plaintiff acknowledges that Oliver arrested him based on his observations, those observations could not lead any reasonably prudent person standing in his shoes to conclude that there was probable cause for arrest. The pleaded facts did not include "mood swings", or a "refusal to take a field sobriety test" or to return to his vehicle. Going one step further, even if the Court decides that it can look to the facts contained in the police report as admissions, they do not establish probable cause to arrest for OUI. In Massachusetts, the right to refuse to take field sobriety tests has been long established and the refusal to take them does not, in any way, add to the probable cause for arrest. To the contrary, it deprives the police of evidence that might better establish it. Although plaintiff contends that the idea that he would refuse to get back into his vehicle is absurd since he was trying to get to a Town Meeting, this fact again is of no consequence in assessing his sobriety. Defendants' attribution of these facts to paragraphs in plaintiff's First Amended Complaint, para. 13, is hard to fathom since they do not appear anywhere.

Defendants can not point to any observations that Oliver made that would support an arrest for OUI which, plaintiff alleges, was carried out to prevent him from attending a Town Meeting as a member of the Financial Committee. and for no legitimate purpose. The <u>Finucane</u> case defendants cite in support of probable cause to arrest for OUI is easily distinguishable on its facts as the defendant in that case was alleged to have bloodshot and glassy eyes and failed part of a field sobriety test. The automobile smelled of alcohol

and there was an empty beer bottle in it. The probable cause to arrest for disorderly conduct in the Bosk case arouse out of a far greater constellation of events than a mere refusal to return to the motor vehicle as the Court will readily see when it reads the case which is annexed hereto. By way of illustration, the vehicle was stopped in the breakdown lane of Route 2, a 55 mph. road. It was too wide for that lane and created a danger if it remained there for any length of time. Defendant refused numerous requests to return to his vehicle form which he had departed to walk down Route 2 to try to return the citation to the police officer. Defendant was told that he would be arrested if he did not return to the vehicle as it was creating a danger and was instructed on his right to a clerk's hearing to contest the citation. Finally, after all of this failed, he was arrested. The Court took pains to point out that the defendant's conduct created a risk of danger to not only to himself but to others. This argument presumes that Court accepts defendants recasting and interpretation of and not plaintiff's actually pleaded facts. Keeping in mind that the plaintiff was never informed at the scene that he was or might be charged with disorderly conduct and that charge was not brought against the plaintiff until the police were forced to abandon the charge of OUI, the defendant's argument is specious.

## 2.     Due Process Claim

Since defendants essentially restate their argument for dismissal of the False Arrest claim as equally apposite here, Plaintiff need not repeat his argument against it and refers the Court to the previous section.

## 3.     Malicious Prosecution

The complaint sets forth all of the requisite elements to establish a malicious prosecution. The absence of probable cause has been discussed in great detail previously. The plaintiff alleges that he was groundlessly arrested first for OUI in order to keep him from attending the Town Meeting where he had previously voiced opposition to police department budge items. Once it was clear that the arrest was utterly without merit, the complaint was changed to an even more groundless charge on which the defendant was subsequently acquitted in a bench trial. The plaintiff had to engage the services of an attorney and was humiliated, embarrassed and distressed over the prosecution.

## C.     Excessive Force Claim

The law is abundantly clear at this point that if the seizure (which an arrest clearly is) is unlawful, any use of force to effectuate that seizure is unlawful. This claim might fail if the false arrest claim fails but it can stand alone to the extent that defendant claims to have been handcuffed (unnecessarily) and also placed in a cruiser such that he suffered pain to his knees.

## D.     MCRA Claim

Plaintiff contends that his groundless seizure, arrest and detention and subsequent prosecution were carried out because of his position on the Financial Committee and his

5

opposition to budget requests by the Chief of Police. The police intended to and did keep him from attending that meeting, thereby violating his right to freedom of speech and association through threats, intimidation or coercion. This is enough to defeat the defendants Rule 12(b)(6) argument.

### E. State Tort Claims

Plaintiff's state tort law claims mirror his federal claims and are, admittedly, premised on the lack of probable cause. Should the Court decide that issue against him, these claims cannot succeed. However, plaintiff maintains here as before that this issue cannot be decided against him either at this juncture or on the facts. With respect to the claim for emotional distress, it is up to the jury, not a judge hearing a Motion to Dismiss, to determine whether it is extreme, outrageous and intolerable to subject a law abiding citizen on his way to a Town Meeting to voice opposition to police department expenditures, to a groundless arrest, lock-up for hours in the police holding area and costly prosecution. Plaintiff sincerely doubts that any juror would find this conduct less than extreme, outrageous and intolerable.

### F. Qualified Immunity

There is no basis whatsoever for raising the banner of qualified immunity as a basis for dismissing this complaint under Rule 12(b)(6). This is a defense, not a ground for dismissal of the complaint coming out of the gate. It is ripe for determination in the context of a summary judgment motion or as a defense at trial and plaintiff's counsel has never seen it raised in this context. Since it has been raised, however, plaintiff maintains that a decision adverse to the defendants should bar them henceforth from raising this issue at any later stage in the proceedings.

Having addressed and readdressed the issue of probable cause, there is no need to argue it again here. Defendants acknowledge that it is the pivotal issue in determining the existence of qualified immunity and they therefore lose this protection since the arrest was not only totally lacking in probable cause but was carried out in bad forth for unlawful reasons. Plaintiff feels no need to point out, yet again, the misstatement and misinterpretation of his factual allegations by defendants in their effort to validate their argument.

### F. Libel Claim

Plaintiff is not under any legal obligation to flesh out his libel claim to any greater extent than he has in his pleadings. This is the purpose of discovery and the claim most definitely sets forth facts sufficient to withstand a Motion to Dismiss under 12(b)(6).

6

However, plaintiff will ultimately be unable to prove this claim as he can no longer locate the source of the article and cannot establish its author. Therefore he does not oppose dismissal of this claim.

### Conclusion

Defendants have gone to great lengths to attempt to obtain a dismissal of this complaint. They have sifted through several versions of the complaint from which they have removed facts from their contextual framework, paraphrased and/or interpreted them and argued for dismissal based on their totally contrived "Relevant Facts". They warp Fed.R.Civ.P.10(c) to argue that the Court should consider the content of a hearsay document as an "adoptive admissions" because it was amended to the Complaint. They even misrepresent the facts and holdings of the cases they have cited. Just to put the actually pleaded facts before the Court, the plaintiff has been compelled to sift through the complaints and state them in their original form and proper context in order to demonstrate the groundlessness of defendants' argument. Plaintiff has even provided the Court with one of the defendants' cited cases so it can see how severely they have distorted the holding.

Plaintiff has established that, even relying on defendants' novel definition of what constitutes a fact and their construction and interpretation of the actually pleaded facts, no probable cause existed for his arrest. Plaintiff therefore requests that this Honorable Court deny the Motion to Dismiss.

Finally, plaintiff requests that the Court award him costs and reasonable attorney's fees in connection with the preparation and hearing (if any) of this Motion. The tactics employed by defendants in advancing this Motion are wholly improper. They distorted the facts, warped the caselaw and construct an edifice through legal sleight of hand. It required over ten hours of time delve through the complaints just to reconstruct the facts as pleaded and put them before the Court in order to demonstrate that they do not support the defendants' claims. The attempt to inject the annexed Exhibit into the Complaint as an admission is, at the least, legally disingenuous. Perhaps an award of costs and fees will deter these tactics in the future.

Respectfully submitted

_____
Andrew Stockwell-Alpert
109 State Street
Boston, MA 02109
(617) 720-4244
BBO #481190

**Certificate of Service**
I hereby certify that a true copy of the above document was served upon [illegible]
by hand on 10/29/04

7

irino (1967) 231 N.E.2d 16, 353

by taxicab passenger against truck uries suffered in intersectional col- there was evidence that cab driver t in going at high speed and not stop sign, but there was evidence er slowed down while approaching and that passenger was rendered contributory negligence of passen- shown as matter of law. Bright- chette (1941) 30 N.E.2d 864, 307

that plaintiff's automobile ap- et intersection and stopped 11 feet -walk where defendant's automo- with it did not, in view of G.L. 8, as matter of law, show contrib- nce. McMillan v. Cantrall (1926) 257 Mass. 103.

no emerged from private driveway ighway without observing oncom- n plain sight was contributorily a matter of law where collision een the two vehicles at or in close ntersection of driveway and high- d v. O'Brien (App. Div. 1966) 35 . 80.

ongful death actions, weight and ency of evidence

nce that passenger's death result- sion which occurred when host intersection without regard to without slowing down and auto- truck on right rear by another nial of directed verdict on counts ges for wrongful death caused by ce was error. McGrath v. G. & P. 1967) 228 N.E.2d 450, 353 Mass.

at driver ignored stop sign and ection where view to her right obscured by trees without slowing d jury's finding that driver was Grath v. G. & P. Thread Corp. .2d 450, 353 Mass. 60.

r death of driver of automobile section, jury was not required to ny of truck driver that at time he tersection he saw the automobile om his right about 200 or 250 ockett v. Akeson (1941) 37 N.E.2d ; 289.

ns

death action indicating that dent might have violated c. 90, ng at a speed greater than what and proper and violated this ing to grant right of way to a

vehicle which already had entered the intersection, supported instructions on contributory negligence and violation of law. Montone v. James (1976) 357 N.E.2d 29, 4 Mass.App.Ct. 857.

Instructions including instruction that if jury finds plaintiff had stopped at stop sign and thereafter entered intersection at same time as defendant right-of-way provisions of this section applied and that plaintiff was presumed to have exercised due care, failed to apprise jury of limited effect of possessing right-of-way and necessity of exercising that right so as to comply with general duty to use due care. Canane v. Dandini (1968) 242 N.E.2d 854, 355 Mass. 72.

If provisions of this section defining right-of-way at controlled and uncontrolled intersections are read to jury in action arising out of collision within intersection controlled by two-way stop signs, court should also explain that right-of-way is not absolute and that motorist having that right must also comply with general duty to use due care. Canane v. Dandini (1968) 242 N.E.2d 854, 355 Mass. 72.

In action for injuries in automobile collision at intersection, statement in charge that question of right of way had to be considered with other circumstances bearing on question of whether person is driving carefully or not was not objectionable. Gray v. Kinnear (1935) 194 N.E. 817, 290 Mass. 31.

In action for injuries in automobile collision at intersection, charge that excessive speed would deprive motorist of statutory right of way was prejudicial, and harm was not cured by charge considered as a whole. Gray v. Kinnear (1935) 194 N.E. 817, 290 Mass. 31.

### 15. Findings

In action for personal injuries and property damage arising out of motor vehicle collision where trial judge made erroneous ruling on this section and matter of right of way figured prominently in trial judge's finding, the error was ground for reversal. Salvato v. Di Silva Transp. Co. (1952) 108 N.E.2d 51, 329 Mass. 305.

An auditor's findings that, although street car operator had right of way over automobile at intersection, he could have stopped street car and avoided collision, but that he failed to exercise reasonable care and, by insistence on technical right of way, contributed to accident, sufficiently established that operator was negligent and that his negligence was a contributing cause of collision. Brule v. Union St. Ry. Co. (1943) 52 N.E.2d 388, 315 Mass. 268.

An auditor's findings that automobile passengers were intoxicated when automobile collided with street car and neither saw nor heard approach of car until the instant before collision occurred, without any finding as to degree of intoxication or any previous conduct of motorist that should have put passengers on guard, did not establish passengers' contributory negligence which would bar recovery from street car company. Brule v. Union St. Ry. Co. (1943) 52 N.E.2d 388, 315 Mass. 268.

## § 9. Designation of highways as through ways; traffic control signs and devices

The department of highways may designate any state highway or part thereof as a through way and may designate intersections or other roadway junctions with state highways at which vehicular traffic on one or more roadways should stop or yield and stop before entering the intersection or junction, and the department may, after notice, revoke any such designation. The department of highways on any state highway or part thereof so designated as a through way, or on any way where the department has designated such way as intersecting or joining with a state highway, shall erect and maintain stop signs, yield signs and other traffic control devices.

The local authorities of a city or town authorized to enact ordinances or by-laws, or make rules, orders or regulations under the provisions of section twenty-two of chapter forty may in accordance with the provisions of section two of chapter eighty-five of the General Laws, including department approval when required, designate any way or part thereof under the control of such city or town as a through way and may designate intersections or other roadway junctions at which vehicular traffic on one or more roadways shall stop or yield and stop before entering the intersection or junction, and may, after notice and like department approval, when required, revoke any such designation. Such

**89 § 9** PUBLIC WAYS AND WORKS

local authorities of a city or town having control of any way or part thereof so designated as a through way shall erect and maintain stop signs, yield signs and other traffic control devices at such designated intersections or junctions.

Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign or a flashing red signal indication shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or junction of roadways.

The driver of a vehicle approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions and, if required for safety to stop, shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After slowing or stopping, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection or junction of roadways; provided, however, that if such a driver is involved in a collision with a vehicle in the intersection or junction of roadways, after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield the right of way.

The driver of a motor vehicle shall not cross or enter an intersection, which it is unable to proceed through, without stopping and thereby blocking vehicles from travelling in a free direction. A green light is no defense to blocking the intersection. The driver must wait another cycle of the signal light, if necessary.

For the purposes of this section the word, "vehicle", shall include a trackless trolley.

Any person violating the provisions of this section shall be punished by a fine not to exceed fifty dollars for each offense.

Amended by St.1948, c. 416; St.1962, c. 225; St.1969, c. 522; St.1971, c. 479; St.1977, c. 838; St.1984, c. 77, § 1; St.1986, c. 301; St.1986, c. 689, §§ 5, 6; St.1987, c. 90; St.1991, c. 552, § 66.

### Historical and Statutory Notes

St.1926, c. 330, § 2.
St.1928, c. 357, § 5.
St.1929, c. 147, § 2.

St.1948, c. 416, approved May 27, 1948, in the third sentence, substituted "or" for "and" before "signals", rewrote the fourth sentence, which prior thereto read, "Every vehicle immediately before entering the limits of a through way except at a terminus thereof shall be

32

Westlaw.

556 N.E.2d 1055                                                                                     Page 1
29 Mass.App.Ct. 904, 556 N.E.2d 1055
(Cite as: 29 Mass.App.Ct. 904, 556 N.E.2d 1055)

P

Appeals Court of Massachusetts,
Worcester.

COMMONWEALTH
v.
John A. BOSK, Jr.

No. 89-P-1190.

Argued February 16, 1990.
Decided July 23, 1990.

Motorist was tried before a judge on speeding offense and before jury on related disorderly conduct charge. Judge found motorist responsible for speeding violation and jury found defendant guilty of disorderly conduct. Judgment was entered in the District Court, Worcester County. Motorist appealed. The Appeals Court held that: (1) speeding conviction should have been appealed to appellate division of district court, and (2) evidence supported disorderly conduct conviction.

Appeal dismissed in part; judgment affirmed in part.

West Headnotes
[1] Automobiles ⟲360
48Ak360 Most Cited Cases
Appeal of speeding violation should have been taken to appellate division of superior court, despite claim that $120 fine imposed was in excess of $100 limit for appellate division's civil penalty jurisdiction; speeding statute expressly stated it was a civil penalty, and it remained such even if application of formula which increased fine with increased speed resulted in fine of over $100. M.G.L.A. c. 90, § 20.
[2] Disorderly Conduct ⟲9
129k9 Most Cited Cases
Evidence supported motorist's conviction for disorderly conduct following a stop for speeding; defendant remained standing on lane of highway, at night with limited visibility conditions, demanding to see radar device even though he had been ordered four or five times to get off road.
**1056 *907 John A. Bosk, Jr., pro se.

Katherine E. McMahon, Asst. Dist. Atty., for Com.

Before PERRETTA, CUTTER and SMITH, JJ.

*904 RESCRIPT.

The defendant was cited by a police officer for a civil motor vehicle infraction (speeding). Subsequently, a complaint issued charging him with being a disorderly person. That offense arose as a result of his conduct when he was stopped for speeding. Both matters were tried together, the criminal complaint by a jury and the alleged civil motor vehicle infraction by the judge presiding at the jury trial. The jury convicted the defendant of being a disorderly person and he was fined. The judge found him responsible for the motor vehicle infraction and he was ordered to pay a fine of $120. The defendant has appealed the finding and conviction to this court.

1. *Jurisdiction of the appeal on the civil motor vehicle infraction.* The defendant has raised three issues on appeal that relate to the finding of responsibility for the civil motor vehicle infraction. He claims that (1) he was denied due process because the police officer at the scene refused to allow him to examine the radar unit reading that, according to the officer, showed his vehicle was operated at seventy-two miles per hour; (2) the judge erred in admitting the radar evidence because it lacked sufficient foundation; and (3) there was insufficient corroboration of the officer's testimony on the issue of speed. The Commonwealth argues that we do not have to reach these issues because, by statute, an appeal of a civil motor vehicle infraction must be heard, in the first instance, by the Appellate Division of the District Court.

[1] General Laws, c. 90C, § 3(A), "expressly governs civil motor vehicle violations for which the maximum penalty or fine is not more than $100 for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

556 N.E.2d 1055
29 Mass.App.Ct. 904, 556 N.E.2d 1055
(Cite as: 29 Mass.App.Ct. 904, 556 N.E.2d 1055)

Page 2

the first offense and does not provide for a penalty of imprisonment". *Commonwealth v. Sasu*, 404 Mass. 596, 598, 536 N.E.2d 603 (1989). The statute provides,*905 "after hearing before a clerk magistrate and a de novo appeal to a District Court judge, a defendant's appeal from a decision of the judge 'shall be governed by rules promulgated by the chief justice of the district court' providing a simplified method of appeal for civil motor vehicle infractions." *Id.* at 598-599, 536 N.E.2d 603, quoting from G.L. c. 90C § 3(A) (1986 ed.). Both the statute and rule VII(a)(1) of the Trial Court Rules, the Uniform Rules on Civil Motor Vehicle Infractions (1986), provide for an appeal to the Appellate Division on issues of law, following the entry of the District Court judge's determination of responsibility. [FN1]

>  FN1. The appellant would reach the Appeals Court only after a final decision by the Appellate Division. See G.L. c. 231, § 109.

The defendant, however, notes that G.L. c. 90C, § 3(A), by its terms, applies only to those civil motor vehicle infractions for which the maximum fine is $100. He argues that, because he was fined $120 for speeding, the statute does not apply and, therefore, his appeal is to the Appeals Court.

The defendant's fine of over $100 is authorized by the second paragraph of G.L. c. 90, § 20, as appearing in St.1988, c. 202, § 25, which reads in part: "Any person convicted of a violation of the provisions of **1057 section seventeen, [G.L. c. 90, § 17, concerning speed limits], or of a violation of a special speed regulation lawfully made under the authority of section eighteen, shall be punished by a fine of not less than fifty dollars. Where said conviction is for operating a vehicle at a rate of speed exceeding ten miles per hour over the speed limit for the way upon which the person was operating, an additional fine of ten dollars for each mile per hour in excess of the ten miles per hour shall be assessed." [FN2] Statute 1988, c. 202, § 28, provides that "violations of the provisions of [G.L. c. 90, § 17] and violations of a special speed regulation lawfully made under the authority of [G.L. c. 90, § 18], shall be deemed civil motor vehicle infractions." Therefore, a citation for speeding continues to be a civil motor vehicle

infraction even if the fine exceeds $100.

>  FN2. Prior to its amendment by St.1988, c. 202, § 25, G.L. c. 90, § 20, provided a maximum penalty of fifty dollars for a first speeding offense.

We conclude that the defendant's appeal in the first instance should have been to the Appellate Division. [FN3] Therefore, we dismiss the defendant's *906 appeal as it relates to the finding of responsibility for a civil motor vehicle infraction.

>  FN3. Both the defendant and the Commonwealth assume that the trial was held on the civil motor vehicle infraction and the disorderly person charge pursuant to G.L. c. 90C, § 3(B). That statute provides for a joint trial where a civil motor vehicle infraction arose from the same occurrence as a criminal motor vehicle violation, with a jury deciding the criminal violation and the judge deciding the question of responsibility for the civil motor vehicle infraction. Here, § 3(B) did not apply because the disorderly person charge was not an alleged criminal *motor vehicle* violation.
>  However, there is nothing in the facts of this case that would bar a joint trial. Further, a joint trial would not change the fact finder on the civil motor vehicle infraction--it remains the judge. See G.L. c. 90C, § 3(A), which specifically states that there is no right to a jury trial for civil motor vehicle infractions. Finally, there is nothing in the procedures followed in the trial court that would change the route of the appeal of the civil motor vehicle infraction from the Appellate Division to the Appeals Court.

[2] 2. *Disorderly conduct.* The defendant claims that the conduct which led to his arrest and conviction under G.L. c. 272, § 53, is protected by the First Amendment to the Federal Constitution and closely related to the type of conduct discussed in *Commonwealth v. Feigenbaum*, 404 Mass. 471, 472-475, 536 N.E.2d 325 (1989). In *Feigenbaum*, the court held that the Commonwealth had introduced adequate evidence that the defendant

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

556 N.E.2d 1055
29 Mass.App.Ct. 904, 556 N.E.2d 1055
(Cite as: 29 Mass.App.Ct. 904, 556 N.E.2d 1055)

Page 3

had consciously disregarded a risk of public inconvenience, annoyance, and alarm, and created a hazardous condition by blocking a tow truck and disregarding warnings to move during a political protest. *Id.* at 475, 536 N.E.2d 325. However, the court stated that "the Commonwealth offered no evidence to show that the defendant's actions were taken without legitimate purpose.... [A]lthough conduct that is designed to call attention to a political cause, and may therefore have a legitimate purpose, may nevertheless be criminal under the common law or by some statute, it does not constitute disorderly conduct under G.L. c. 272, § 53." *Ibid.*

The defendant's conduct here is readily distinguishable from that in *Feigenbaum*. A State trooper testified that at 2:00 A.M. she was alone in a cruiser parked in the breakdown lane of Route 2 westbound in Fitchburg. She observed the defendant's vehicle, a hearse, approaching at an estimated speed of seventy miles per hour. She activated the radar which displayed a reading that the defendant was operating his vehicle at the rate of seventy-two miles per hour in a zone posted as fifty-five miles per hour. The trooper testified that "the vehicle that I stopped pulled into the breakdown lane, which isn't as wide as the travel lane, and it was probably a foot or so inside the travel lane, off the travel lane in the breakdown lane, and I positioned my cruiser so that I was--the left side of my cruiser was flush with the beginning of the breakdown lane to give me some buffer zone in which to walk." The trooper explained to the defendant why she had stopped him, then wrote him a citation for speeding at seventy-two miles per hour. **1058 At this time a Leominster police cruiser stopped at the scene.

The defendant refused to take the citation and asked to see the radar. The trooper denied the defendant's request, informing him of his right to a hearing. The defendant still refused to take the citation and the trooper dropped it into his lap.

The defendant left his motor vehicle and walked toward the trooper, stating in a loud voice that he wanted to see the radar detector. The trooper told the defendant that it was not safe to be in the road, and, "at least three, maybe four or five" times, to get back into his motor vehicle. *907 The defendant was standing in the traffic lane, it was dark, and vehicles going by the scene were forced to move, according to the trooper, from the travel lane into the passing lane.

The defendant refused to comply with the trooper's order. The trooper advised the defendant that, if he did not return to his motor vehicle, she would arrest him. The defendant refused to comply and was arrested.

The defendant, unlike Feigenbaum, was not acting in furtherance of any political cause. Further, there was no legitimate purpose involved in the defendant's actions. Rather, the evidence demonstrates that by his conduct he was risking not only his own safety but that of others. See *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

The other issues raised by the defendant are without merit.

The defendant's appeal of the finding of responsibility for the civil motor vehicle infraction is dismissed. The judgment on the disorderly person charge is affirmed.

*So ordered.*

29 Mass.App.Ct. 904, 556 N.E.2d 1055

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B00558000000471500015305... 10/29/2004